IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § Civil Action No.: |
| TESHUATER, LLC, LARRY DONNELL LEONARD, II, SHUWANA LEONARD, and TESHUA BUSINESS GROUP, LLC, | § § § § |
| | § |
| Defendants. | § § |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants Teshuater, LLC ("Teshuater"), Larry Donnell Leonard, II ("Larry Leonard"), Shuwana Leonard ("Shuwana Leonard"), and Teshua Business Group, LLC ("TBG") (collectively "Defendants"), and alleges as follows:

## I.
## SUMMARY

1. Since at least 2017, Larry Leonard, individually and through Teshuater and TBG, along with his wife, Shuwana Leonard, targeted investors in the African-American community by promising oversized returns on various investments related to Teshuater, a business that bottled and distributed alkaline water. During the course of this scheme, Defendants raised nearly $500,000 from over 500 investors through materially false and misleading statements and omissions and other deceptive conduct.

2. Defendants perpetrated their fraud through three separate offerings. First, Larry Leonard, Shuwana Leonard, and Teshuater offered and sold worthless "stock certificates" that did

not actually convey ownership interest in Teshuater. Larry Leonard also promised investors, who purchased Teshuater stock, short-term investment returns of up to 3,000%. Second, Larry Leonard, individually and on behalf of Teshuater, fraudulently sold "TeshuaCoins," a purported cryptocurrency issued by Teshuater. Among other things, he lied about the usability of TeshuaCoins and falsely claimed that TeshuaCoins were backed by real assets owned by Teshuater (*i.e.*, the bottled water sold by the company). Finally, Larry Leonard, individually and on behalf of Teshuater, peddled investments in a purported high-yield, short-term Bitcoin-mining[1] program. The Bitcoin-mining program, however, never existed.

3. After commingling investor funds in TBG's and Teshuater's bank accounts with funds from unrelated and undisclosed business ventures, the Leonards then used these funds to fund other business ventures and to pay for their personal expenses.

4. By committing the acts alleged in this Complaint, Defendants directly and indirectly engaged in, and unless restrained and enjoined by the Court will continue to engage in, acts, transactions, practices, and courses of business that violate certain antifraud provisions of the federal securities laws; specifically, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Larry Leonard, Shuwana Leonard, and Teshuater also violated the securities-registration provisions, including Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)], by offering to sell and/or selling

---

[1] Bitcoin mining is a particular type of cryptocurrency mining. Cryptocurrency mining is a revenue-generating process wherein a person or entity uses a computer to run special software that solves complex algorithms used to validate transactions in a cryptocurrency network. In the case of Bitcoin mining, the network collects all transactions made during a set time period (usually the last ten minutes) into a list called a block. Miners compete to be the first to confirm the transactions in the block and write that block to the Bitcoin blockchain. The first miner to confirm a block of transactions and write the block to the blockchain is rewarded with newly issued or "mined" Bitcoin. These Bitcoins, in turn, can be held or sold on a cryptocurrency exchange for fiat currency (e.g., U.S. dollars).

unregistered securities.

5. In the interest of protecting the public from any further fraudulent activity and harm, the Commission brings this action against Defendants seeking: (a) permanent injunctive relief; (b) disgorgement of ill-gotten gains plus prejudgment interest thereon; (c) civil penalties; and (d) all other equitable and ancillary relief to which the Court determines the Commission is entitled.

## II.
## JURISDICTION AND VENUE

6. This case involves the offer and sale of securities in the forms of stock and investment contracts related to a cryptocurrency and Bitcoin-mining participation units. The stock and the investment contracts are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)]. Thus, the Court has jurisdiction over this action under Section 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

7. Defendants directly and/or indirectly made use of the mails and/or of the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business described in this Complaint.

8. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas, Houston Division, including but not limited to Defendants' sales of securities, misrepresentations, omissions, acts, practices, transactions, and courses of business.

## III.
## DEFENDANTS

9. Defendant Larry Donnell Leonard, II, age 45, is a natural person residing in

Houston, Texas. Larry Leonard serves as the President of Teshuater and TBG, entities he created and controlled along with his wife, Shuwana Leonard. Larry Leonard does not hold any securities licenses and is not and has never been registered with the Commission in any capacity.

10. Defendant Shuwana Leonard, age 45, is a natural person residing in Houston, Texas. Shuwana Leonard serves as the Director of Operations of Teshuater and TBG, entities she created and controlled along with her husband, Larry Leonard. Shuwana Leonard does not hold any securities licenses and is not and has never been registered with the Commission in any capacity.

11. Teshuater, LLC ("Teshuater") is a Texas member-managed limited liability company formed in 2017 with its principal place of business in Houston, Texas. TBG is Teshuater's sole managing member. Neither Teshuater nor its securities are or were ever registered with the Commission.

12. Teshua Business Group, LLC ("TBG") is a Texas member-managed limited liability corporation formed in 2017 with its principal place of business in Houston, Texas. TBG's members include the Leonards. Neither TBG nor its securities are or were ever registered with the Commission.

## IV.
## FACTS

A. **BACKGROUND**

13. Larry Leonard is a businessman who—along with his wife Shuwana Leonard—created and operated several entities, including Teshuater and TBG. A former Christian pastor, Larry Leonard capitalized on his background as "a man of the cloth" to gain investors' trust. As early as spring 2017, he, personally and on behalf of Teshuater and TBG, and Shuwana Leonard victimized those investors through their fraudulent schemes.

COMPLAINT
SEC V. TESHUATER, ET AL.
PAGE 4 OF 16

14. Initially, the Leonards focused on courting investments in Teshuater, which they touted as the first black-owned alkaline water company. Although Teshuater conducted some operations, the company earned little-to-no profit since its inception. Later, Larry Leonard expanded the scheme to include a cryptocurrency dubbed "TeshuaCoin" and a Bitcoin-mining program.

15. Larry Leonard and Teshuater solicited investors primarily through social media. The Leonards appeared on Facebook Live webcasts aimed at "wealth generation" for the African-American community. In those Facebook Live videos, Larry Leonard and Teshuater made brazen misrepresentations and omissions regarding, *inter alia*, expected investment returns and how they would use the investors' funds. For example, in a November 15, 2018 Facebook Live video, Larry Leonard falsely claimed the Commission authorized the Leonards to raise funds from investors and to continue their business operations. In fact, Teshuater, TBG, and the securities from the three investment offerings were never registered with the Commission, much less *authorized* by the Commission.

B. **DEFENDANTS' FRAUDULENT OFFERINGS**

16. Between March 2017 and December 2018, Defendants perpetrated their fraud through three separate investment offerings: (1) the offer and sale of Teshuater "Stock Certificates"; (2) the offer and sale of a cryptocurrency dubbed TeshuaCoin; and (3) multiple Bitcoin-mining investment opportunities. Defendants raised approximately $486,984.28:

| Offering | Offering Dates | Total Funds Raised |
|---|---|---|
| Teshuater Shares | May 2017 – February 2019 | $291,044.07 |
| TeshuaCoins | August 2017 – June 2018 | $170,395.25 |
| Bitcoin Mining | December 2017 – March 2018 | $25,544.96 |
| | | **$486,984.28** |

## 1. *Teshuater Stock Certificates*

17. The Leonards, individually and on behalf of Teshuater, sold worthless "stock certificates" in Teshuater through a series of materially false statements and omissions. The Leonards told investors they would become part-owners in Teshuater if they purchased stock. Larry Leonard also promised that the stock would increase in value. The Leonards knew, or were severely reckless in not knowing, that these statements were false.

18. Teshuater is a limited liability company, not a corporation. Therefore, it does not have, and cannot issue, common stock. In other words, any stock certificates purporting to provide ownership in Teshuater are only worth the paper on which they are printed. However, the Leonards never told investors that the stock certificates did not actually convey ownership in Teshuater, and, therefore, were worthless. Further, Larry Leonard arbitrarily set the price of Teshuater's stock certificates, which ranged from a few cents to $1, but were typically $0.10 per share.

19. Further, Larry Leonard made brazen and unsubstantiated promises regarding increases in the value of the Teshuater stock. During one Facebook Live presentation, Larry Leonard promised that a $50 investment in Teshuater "is going to be worth $750 overnight, just like that, to [sic.] noon tomorrow." He later promised that a $1,000 investment would be worth $30,000 in just a few days.

20. In furtherance of the fraud, the Leonards prepared and distributed bogus "stock certificates" that purported to document the number of shares purchased. However, the Leonards knew that the "stock certificates" were meaningless. Notably, the Leonards never issued themselves stock certificates to document their claimed ownership interests in Teshuater. Whenever the Leonards wanted to raise more money, they simply created new stock certificates on their computer, thereby diluting whatever hypothetical ownership interests the previously issued stock certificates represented.

21.     The investors either sent their funds directly to TBG or purchased their shares through the Teshuater website. For purchases investors made on Teshuater's website, the Leonards caused those investor funds to be deposited in either TBG's or Teshuater's bank accounts.

### 2. *TeshuaCoins*

22.     Larry Leonard, individually and on behalf of Teshuater, also sought to capitalize on the cryptocurrency frenzy by soliciting additional investments through material misrepresentations and omissions. Larry Leonard prepared and distributed a white paper introducing TeshuaCoins—a purported cryptocurrency issued by Teshuater (the "White Paper"). According to the White Paper, Larry Leonard planned to raise $20 million from the TeshuaCoin offerings.

23.     The White Paper included several material misrepresentations about the usability and security of TeshuaCoins. Among other things, Larry Leonard and Teshuater claimed TeshuaCoins were a "fully functioning cryptocurrency" that could be "traded and utilized in much the same way as BitCoin." The White Paper also stated that TeshuaCoins' "value and usability are protected over time." Larry Leonard also told investors that TeshuaCoins were unique among existing crypto opportunities because they were "backed" by Teshuater's assets—bottled alkaline water.

24.     As Larry Leonard and Teshuater knew, or were severely reckless in not knowing, these representations were false. TeshuaCoins could not be used as currency like other widely circulated cryptocurrencies such as Bitcoin. Investors could not even use TeshuaCoins to purchase Teshuater water or receive a discount on water purchases, as Larry Leonard had promised. Furthermore, TeshuaCoins were never backed by Teshuater's assets, and Larry Leonard never took the necessary steps to implement the technology needed to tie those assets to TeshuaCoins.

25. Larry Leonard and Teshuater also misrepresented the value of TeshuaCoins. Larry Leonard regularly told investors they would become millionaires by investing in TeshuaCoins, and that each TeshuaCoin would be worth $100 or more once the cryptocurrency started trading on an exchange. Although Larry Leonard eventually paid to list TeshuaCoins on a cryptocurrency exchange, TeshuaCoins never generated the trading volume, prices, or utility needed to make Larry Leonard's outlandish promises come true.

26. Investors purchased their TeshuaCoins through the Teshuater website. Following the online purchases, the Leonards caused those investor funds to be deposited in either TBG's or Teshuater's bank accounts.

### 3. *Bitcoin-Mining Opportunity*

27. Larry Leonard, individually and on behalf of Teshuater, continued with the cryptocurrency theme and solicited additional investments in a Bitcoin-mining operation[2] through a series of material misrepresentations and omissions.

28. Larry Leonard promised investors that they would receive weekly payouts and projected returns of up to 50 percent within just a few months (the time period for returns was a moving target that varied from 3-6 months). As Larry Leonard and Teshuater knew, or were severely reckless in not knowing, these representations were false. Teshuater never had an actual Bitcoin-mining operation—either with Teshuater's own mining equipment or through a Bitcoin-mining partnership with another entity. And, as discussed further below, Larry Leonard never used the investor funds raised for Bitcoin mining or to develop such a mining operation.

29. In addition, Larry Leonard and Teshuater failed to disclose to investors the speculative nature of the Bitcoin-mining investment. They never prepared or distributed a private

---

[2] *See* fn. 1, *supra*.

COMPLAINT  
*SEC V. TESHUATER, ET AL.*  
PAGE 8 OF 16

placement memorandum or similar documents. Like the other fraudulent investment offerings, investors visited Teshuater's website, placed the Bitcoin-mining investment in their online shopping carts, and purchased the investment. Larry Leonard provided investors with false and incomplete information on the Teshuater website regarding the projected returns, the timing for those returns, and the dates when the investment would begin "trading." Investors were also informed that their returns would be paid in Bitcoin. Investors, however, never received any returns.

C. **DEFENDANTS MISUSED INVESTOR FUNDS**

   1. *The Stated Uses of Investor Funds*

30. Larry Leonard, individually and on behalf of Teshuater, misrepresented how Teshuater would use investor funds. Among other things, he told investors the money raised from the Teshuater stock sales would be used to improve Teshuater's products and to take the company public. Similarly, he told investors that offering proceeds raised from the Bitcoin-mining investments would be used to mine Bitcoin. These representations were false.

31. Similarly, the White Paper included a "funding budget breakdown" describing how Teshuater would spend the $20 million it intended to raise from the TeshuaCoin offering:

| Use of Funds | Amount |
|---|---|
| Crypto-Currency Mining Project (development of mining farm) | $5,000,000 |
| Marketing | $2,000,000 |
| Distribution Center Developments | $10,000,000 |
| *Atlanta, GA distribution center* | *($2,500,000)* |
| *Seattle, WA distribution center* | *($2,500,000)* |
| *Houston, TX distribution center* | *($2,500,000)* |
| *Toledo, OH distribution center* | *($2,500,000)* |
| Naming-Rights Deal | $1,000,000 |
| Transportation (freight expenses) | $2,000,000 |
| **Total** | **$20,000,000** |

32. Based on representations from Larry Leonard and Teshuater, investors sent their money directly to one of several bank accounts held in the name of Teshuater or TBG, or paid for their investments through the Teshuater website. For online purchases, the Leonards caused those investor funds to be deposited in either TBG's or Teshuater's bank accounts.

### 2. *Defendants Used Investor Funds for Undisclosed and Unauthorized Purposes*

33. Defendants did not spend investor funds from the offerings as they represented that they would. They misappropriated funds using jointly-owned accounts such as the bank accounts held in the name of TBG and/or Teshuater. By way of example, the Leonards transferred investor funds raised from the Bitcoin-mining investment to a jointly-owned personal securities account where Larry Leonard used the funds to trade options. After losing money from those trades, the Leonards used the remaining Bitcoin-mining funds to pay off Teshuater company loans. They never told investors their money was being used to fund personal securities trades or to pay off company loans. Further, the Leonards diverted most of the investor funds to TBG bank accounts where they were commingled with funds from other business operations. They then used a majority of the commingled investor funds from the TBG bank accounts (1) to pay for business ventures unrelated to Teshuater, TeshuaCoins, or Bitcoin mining; and (2) to pay their personal living expenses, including cars and housing costs.

34. The chart below details Defendants' misuse of investor funds:[3]

---

[3] The total amount of funds identified in this chart exceeds the total amount of investor funds raised, because investor funds were commingled with funds from the Leonards' and TBG's other business ventures. But based on evidence available to-date, the commingled investors' funds were so intermingled with funds from other businesses that it is impossible to untangle how Defendants used specific funds from particular investors.

| Actual Use of Proceeds | | |
|---|---|---|
| | Amount | Percent |
| Personal Expenses of Leonard & Family | $279,033 | 43.58% |
| General Business Expenses[4] | $103,653 | 16.19% |
| Unknown or Other Uses of Funds[5] | $82,580 | 12.90% |
| Loan Payments | $73,726 | 11.51% |
| Cash Withdrawals | $45,521 | 7.11% |
| Travel | $32,811 | 5.12% |
| Marketing & Consulting | $21,066 | 3.29% |
| Freight Expenses | $1,604 | 0.25% |
| Trading Losses in Personal Securities Account | $300 | 0.05% |
| **Total** | **$640,294** | **100.00%** |

## V.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

*Against All Defendants*

35. Plaintiff Commission realleges and incorporates by reference paragraphs 1 through 34 of this Complaint as if set forth verbatim.

36. By engaging in the acts and conduct alleged herein, Teshuater, Larry Leonard, and Shuwana Leonard, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or

---

[4] "General Business Expenses" denotes payments that could be attributable to an unidentified business, but are not accounted for in the use of proceeds explanation in the White Paper or any other representations by Defendants.

[5] The majority of this category is comprised of funds paid to third parties for unknown purposes and net transfers made to unidentified accounts.

by use of the mails, or of any facility of any national securities exchange, have (a) employed devices, schemes, and artifices to defraud, (b) made untrue statements of material facts, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (c) engaged in acts, practices, and courses of business which operated as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

37. By engaging in the acts and conduct alleged herein, TBG, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or by use of the mails, or of any facility of any national securities exchange, has (a) employed devices, schemes, and artifices to defraud, and/or (b) engaged in acts, practices, and courses of business which operated as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

38. Defendants engaged in the above-referenced conduct knowingly or with severe recklessness.

39. By engaging in the conduct described above, Teshuater, Larry Leonard, and Shuwana Leonard violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

40. By engaging in the conduct described above, TBG violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## SECOND CLAIM FOR RELIEF
## Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

*Against All Defendants*

41. Plaintiff Commission realleges and incorporates by reference paragraphs 1 through 34 of this Complaint as if set forth verbatim.

42. By engaging in the acts and conduct alleged herein, Teshuater, Larry Leonard, Shuwana Leonard, and TBG directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or by the use of the mails, knowingly or with severe recklessness, employed devices, schemes, or artifices to defraud.

43. By engaging in the acts and conduct alleged herein, Teshuater, Larry Leonard, and Shuwana Leonard, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or by the use of the mails, and at least negligently, made untrue statements of material facts, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. By engaging in the acts and conduct alleged herein, Teshuater, Larry Leonard, Shuwana Leonard, and TBG, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or by the use of the mails, and at least negligently, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon purchasers.

45. By engaging in the conduct described above, Teshuater, Larry Leonard, and Shuwana Leonard violated, and unless enjoined will continue to violate, Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2), and (3)].

46. By engaging in the conduct described above, TBG violated, and unless enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

### THIRD CLAIM FOR RELIEF
### Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]

*Against Teshuater, Larry Leonard, and Shuwana Leonard*

47. Plaintiff Commission realleges and incorporates by reference paragraphs 1 through 34 of this Complaint as if set forth verbatim.

48. By engaging in the conduct described herein, Teshuater, Larry Leonard, and Shuwana Leonard, directly or indirectly, singly or in concert with others:

   a. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement was in effect; and/or

   b. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements, or otherwise, securities as to which no registration statement had been filed.

49. By engaging in the conduct described above, Teshuater, Larry Leonard, and Shuwana Leonard have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

### VII.
### REQUEST FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

**COMPLAINT** **PAGE 14 OF 16**
*SEC v. TESHUATER, ET AL.*

1.  Permanently enjoin all Defendants from violating Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) [17 C.F.R. §§ 240.10b-5(a) and (c)] thereunder.

2.  Permanently enjoin Defendants Teshuater, Larry Leonard, and Shuwana Leonard from violating Sections 5(a), 5(c), and 17(a)(2) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)(2)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

3.  Permanently enjoin all Defendants from directly or indirectly, including, but not limited to, through any entity they own or control, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Larry Leonard and Shuwana Leonard from purchasing or selling securities for their own personal accounts.

4.  Order all Defendants to disgorge ill-gotten gains and benefits obtained or to which they were not otherwise entitled, as a result of the violations alleged herein, plus prejudgment interest on those amounts.

5.  Order all Defendants to each pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for their violations of the federal securities laws alleged herein.

6.  Order such other relief as this Court may deem just, proper, and equitable.

Dated: April 2, 2020					Respectfully submitted,

					 /s/ Jason P. Reinsch
					JASON P. REINSCH
					Attorney- in-Charge
					Texas Bar No. 24040120
					SDTX Bar No. 914573
					JAMES E. ETRI
					Texas Bar No. 24002061
					SDTX Bar No. 23160

					United States Securities and Exchange Commission
					Fort Worth Regional Office
					Burnett Plaza, Suite 1900
					801 Cherry Street, Unit #18
					Fort Worth, TX 76102-6882
					Ph: 817-900-2601 (JPR)
					Fax: 917-978-4927
					reinschj@sec.gov
					etrij@sec.gov

					ATTORNEYS FOR PLAINTIFF UNITED
					STATES SECURITIES AND EXCHANGE
					COMMISSION