IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | |
| § Civil Action No.: 4:20-cv-01187 | |
| **TESHUATER, LLC, LARRY DONNELL** § | |
| **LEONARD, II, SHUWANA LEONARD, and** § | |
| **TESHUA BUSINESS GROUP, LLC,** § | |
| § | |
| Defendants. § | |
| § | |

**PLAINTIFF'S MOTION FOR REMEDIES AND FOR ENTRY OF
FINAL JUDGMENTS AGAINST DEFENDANTS AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii-iv

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING AND SUMMARY OF REQUESTED RELIEF ........................................................................1

II. ARGUMENT AND AUTHORITIES ...........................................................................2

   A. Defendants' conduct warrants entry of permanent injunctions ...........................2

      1. Defendants' conduct was egregious..........................................................3

      2. Defendants' violations were recurrent ......................................................4

      3. Defendants acted with a high degree of scienter .....................................4

      4. Defendants do not sincerely recognize their transgressions ....................5

      5. Because Defendants have elected not to participate in this lawsuit, it is unknown how the Leonards are currently employed ...............................5

   B. The Court should order Defendants to pay disgorgement and prejudgment interest ...................................................................................................................6

      1. Principles of disgorgement .......................................................................6

      2. Defendants' disgorgement ........................................................................7

      3. Prejudgment interest .................................................................................8

   C. The Court Should Order the Leonards to pay civil penalties...............................9

III. CONCLUSION...............................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Liu v. SEC*,
   591 U.S. 71 (2020) ................................................................................................. 6, 7, 8

*Providence Rubber Co. v. Goodyear*,
   76 U.S. (9 Wall.) 788 (1869) ........................................................................................ 7

*SEC v. Amerifirst Funding, Inc.*,
   No. 3:07-CV-1188-D, 2008 WL 1959843 (N.D. Tex. May 5, 2008).......................... 7

*SEC v. AMX, Int'l, Inc.*,
   7 F.3d 71 (5th Cir.1993) .............................................................................................. 7

*SEC v. Blackburn*,
   15 F.4th 676 (5th Cir. 2021) ........................................................................................ 8

*SEC v. Blatt*,
   583 F.2d 1325 (5th Cir. 1978) ................................................................................ 3, 7

*SEC v. Caterinicchia*,
   613 F.2d 102 (5th Cir. 1980) ....................................................................................... 3

*SEC v. Evolution Cap. Advisors, LLC*,
   No. H-11-CV-2945, 2013 WL 5670835 (S.D. Tex. Oct. 16, 2013).............................. 8

*SEC v. Faulkner*,
   No. 3:16-CV-1735-D, 2021 WL 75551 (N.D. Tex. Jan. 8, 2021)........................... 6, 7

*SEC v. First Fin. Grp. of Texas*,
   645 F.2d 429 (5th Cir. 1981) ....................................................................................... 3

*SEC v. Fowler*,
   6 F.4th 255 (2d Cir. 2021) ........................................................................................... 7

*SEC v. Gann*,
   565 F.3d 932 (5th Cir. 2009) ....................................................................................... 3

*SEC v. Gunn*,
   No. 3:08-CV-1013-G, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ........................ 8

*SEC v. Halek*,
   537 F.App'x 576 (5th Cir. 2013) ................................................................................. 8

*SEC v. Hallam*,
   42 F.4th 316 (5th Cir. 2022) .................................................................................... 6, 7


*SEC v. Helms*,
   No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ................. 3, 7, 8, 9

*SEC v. JSG Cap. Invs., LLC*,
   No. 16-cv-02814-JSW (JSC), 2017 WL 3579570 (N.D. Cal. June 30, 2017) ........................... 6

*SEC v. Kern*,
   425 F.3d 143 (2d Cir. 2005) ......................................................................................... 10

*SEC v. Life Partners Holdings, Inc.*,
   71 F. Supp. 3d 615 (W.D. Tex. Dec. 2, 2014) .......................................................... 10

*SEC v. MacDonald*,
   699 F.2d 47 (1st Cir. 1983) ........................................................................................... 7

*SEC v. Mattera*,
   No. 11 Civ. 8323(PKC), 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013) ....................... 6

*SEC v. Morris*,
   No. 3:20-CV-02958-B, 2022 WL 9497046 (N.D. Tex. Oct. 14, 2022) ................. 7

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980) ................................................................................... 2, 3

*SEC v. Razmilovic*,
   822 F. Supp. 2d 234 (E.D.N.Y. 2011) ..................................................................... 10

*SEC v. Sneed*,
   No. 3:20-CV-2988-S-BH, 2021 WL 4202171 (N.D. Tex. Sept. 10, 2021) ........................... 6, 7

*SEC v. United Energy Partners, Inc.*,
   88 F.App'x. 744 (5th Cir. 2004) ................................................................................. 8

*SEC v. Voight*,
   No. H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) ....................... 7, 9, 10

*SEC v. Zale Corp.*,
   650 F.2d 718 (5th Cir. 1981) ................................................................................... 2, 3

**Statutes**

Securities Act of 1933 [15 U.S.C. §§ 77a *et seq*.]

   Section 5(a) [15 U.S.C. § 77e(a)].................................................................................2

   Section 5(c) [15 U.S.C. § 77e (c)] ............................................................................ 2

   Section 17(a) [15 U.S.C. § 77q(a)] ................................................................... 1, 2, 5

   Section 20(b) [15 U.S.C. § 77t(b)].................................................................................2

Section 20(d) [15 U.S.C. § 77t(d)] ......................................................................................... 9

Section 20(d)(2)(C) [15 U.S.C. § 77t(d)(2)(C)] .....................................................................9

Securities Exchange Act of 1934 [15 U.S.C. §§ 78a *et seq.*]

Section 10(b) [15 U.S.C. § 78j(b)] ...............................................................................1, 2, 5

Section 21(d) [15 U.S.C. § 78u(d)].........................................................................................2

Section 21(d)(3) [15 U.S.C. § 78u(d)(3).................................................................................9

Section 21(d)(3)(A)(ii) [15 U.S.C. § 78u(d)(3)(A)(ii)] ..........................................................6

Section 21(d)(3)(B)(iii) [15 U.S.C. § 78u(d)(3)(B)(iii)].........................................................9

Section 21(d)(5) [15 U.S.C. § 78u(d)(5)] ..............................................................................6

Section 21(d)(7) [15 U.S.C. § 78u(d)(7)] ..............................................................................6

## **Rules and Regulations**

Securities Exchange Act of 1934 Rule 10b-5 [17 C.F.R. § 240.10b-5] ..................................1, 2, 5

17 C.F.R. § 201.1001 ............................................................................................................. 9

Pursuant to the Court's March 29, 2024 Order granting Plaintiff Securities and Exchange Commission's ("SEC") motion for summary judgment (Dkt. 32), the SEC submits this Motion for Remedies and for Entry of Final Judgments against Defendants Teshuater, LLC ("Teshuater"), Larry Donnell Leonard, II ("Larry Leonard"), Shuwana Leonard ("Shuwana Leonard"), and Teshua Business Group, LLC ("TBG") (collectively, "Defendants"), and Brief in Support, and respectfully shows as follows:

## I.
## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING AND SUMMARY OF REQUESTED RELIEF

Larry Leonard and his wife Shuwana Leonard (collectively, the "Leonards"), individually and on behalf of their businesses Teshuater and TBG, targeted investors in the African American community by promising oversized returns on various investments related to Teshuater, a business that bottled and distributed alkaline water. Through their schemes, the Leonards raised almost $500,000 from more than 500 investors.

On March 29, 2024, the Court granted the SEC's motion for summary judgment against Defendants for violations of the federal securities laws and ordered the SEC to provide the Court with a final judgment to resolve the case. (Dkt. 34, "Summary Judgment Order" 13). In its Order, the Court found that the SEC's summary judgment evidence established that there was no genuine issue of material fact regarding the Defendants' liability for any of the claims asserted against them. (Summary Judgment Order 2, 13).

In particular, the Court found that Teshuater, Larry Leonard, Shuwana Leonard, and TBG violated: Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]. (Dkt. 34, p. 13). The Court also found that

1

Teshuater, Larry Leonard, and Shuwana Leonard violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]. *Id*. Based on those findings and the record in this case, the SEC requests that the Court enter final judgments against Defendants that:

1. permanently restrain and enjoin Teshuater, Larry Leonard, Shuwana Leonard, and TBG from future violations of Section 10(b) of the Exchange Act, Rule 10b-5 of the Exchange Act, and Section 17(a) of the Securities Act;

2. permanently restrain and enjoin Teshuater, Larry Leonard, and Shuwana Leonard from future violations of Section 5 of the Securities Act;

3. permanently restrain and enjoin Teshuater, Larry Leonard, Shuwana Leonard, and TBG from directly or indirectly, including, but not limited to, through any entity they own or control, participating in the issuance, offer, or sale of any security, digital or otherwise; provided, however, that such injunction shall not prevent them from purchasing or selling securities for their own account;

4. order Teshuater, Larry Leonard, Shuwana Leonard, and TBG to disgorge $395,189.34, on a joint and several basis, representing the ill-gotten gains they received as a result of their wrongdoing, and to pay prejudgment interest ("PJI") of $119,520.76 on that disgorgement amount; and

5. order Larry Leonard and Shuwana Leonard to pay civil penalties of $230,464 each.

## II.
## ARGUMENT AND AUTHORITIES

**A.      Defendants' conduct warrants entry of permanent injunctions.**

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] contemplate the entry of permanent injunctions in SEC enforcement actions when the evidence establishes a "reasonable likelihood" that defendants will engage in future violations of the securities laws. *See SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present

2

circumstances, betoken a 'reasonable likelihood' of future transgressions."[1] *Zale Corp.*, 650 F.2d at 720; *see SEC v. Caterinicchia*, 613 F.2d 102, 104-05 (5th Cir. 1980); *SEC v. Blatt*, 583 F.2d 1325, 1334-35 (5th Cir. 1978); *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *18 (W.D. Tex. Aug. 21, 2015). Thus, the SEC must prove that a securities law violation occurred and that there is a reasonable likelihood that the defendants, if not enjoined, will engage in future violations. *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 434 (5th Cir. 1981).

Courts consider a number of factors in determining whether to grant injunctive relief, including the: (1) egregiousness of defendants' conduct; (2) isolated or recurrent nature of the violations; (3) degree of scienter; (4) sincerity of defendants' recognition of their transgression; and (5) likelihood of defendants' jobs providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *Blatt*, 583 F.2d at 1334-35; *Helms*, 2015 WL 5010298, at *18. The cessation of the current illegal conduct does not eliminate the basis for injunctive relief. *Murphy*, 626 F.2d at 655; *see also Helms*, 2015 WL 5010298, at *18. For example, the Fifth Circuit has found that a defendant's past illegal conduct raised a presumption the defendant would commit future violations—justifying an injunction—even though the defendant's job no longer specifically involved the sale of mutual funds. *Gann*, 565 F.3d at 940.

As detailed below, Defendants' misconduct supports the entry of permanent injunctions.

1.  **Defendants' conduct was egregious.**

Defendants obtained almost $500,000 from investors through their sales of three fraudulent investments: (i) bogus Teshuater "stock certificates;" (ii) a crypto asset security dubbed TeshuaCoin; and (iii) a purported Bitcoin-mining operation. (Summary Judgment Order

---

[1] In evaluating the likelihood of future violations, the Court should evaluate the totality of the circumstances. *Zale Corp.*, 650 F.2d at 720.

3). None of the fraudulent securities offerings were registered with the SEC. *Id*. at 4. The Leonards falsely told their investors, among other things, that by purchasing the purported Teshuater "stock certificates" they would become part owners of Teshuater. *Id*. at 5. Larry Leonard also deceived investors by claiming that TeshuaCoin was a "fully-functioning cryptocurrency" that could be "traded and utilized in much the same way as Bitcoin." *Id*. at 5-6. Additionally, Larry Leonard sold investments in a fictitious Bitcoin-mining operation. *Id*. at 7. Defendants commingled the investor funds they received from the three fraudulent offerings and then misappropriated most of the proceeds. *Id*. at 4. Despite promises of outlandish returns, the investors in all three schemes lost virtually everything. *Id*. at 5-7. The egregiousness of Defendants' conduct supports injunctive relief.

### 2. Defendants' violations were recurrent.

Defendants' misconduct was not isolated. Between May 2017 and February 2019—a period of 22 months—Defendants perpetrated three distinct schemes, defrauding more than 500 investors located in at least 10 states. *Id*. at 3. This extensive pattern of recurrent violations weighs in favor of injunctive relief.

### 3. Defendants acted with a high degree of scienter.

The Leonards' misrepresentations and omissions demonstrate a high degree of scienter. The Leonards knew, or were severally reckless in not knowing, that the purported shares of Teshuater stock were worthless. *Id*. at 11. Larry Leonard knew, or was severely reckless in not knowing, that TeshuaCoin had no real value and was not backed by Teshuater's alkaline water. *Id*. Larry Leonard also knew, or was severely reckless in not knowing, that the Bitcoin-mining program never existed. *Id*. at 12. Likewise, the Leonards' conduct demonstrates a high degree of scienter. The Leonards knew, or were severally reckless in not knowing, that they were using investor funds for unauthorized purposes. *Id*. Moreover, Larry Leonard used his status as an

4

African American pastor to defraud investors. *Id*. at 3-4. The Leonards' scienter is imputed to Teshuater and TBG because the Leonards controlled both companies and acted on their behalf as their president and director of operations. *Id*. at 12. Defendants' scienter factors strongly in favor of injunctive relief.

**4.    Defendants do not sincerely recognize their transgressions.**

There is no evidence in the summary judgment record indicating that the Leonards have acknowledged the seriousness of their violations or the investor harm they caused. Moreover, Larry Leonard's June 17, 2024 statements to the Court demonstrate that he falsely views himself and Shuwana Leonard as *victims* in this case. Rather than acknowledging Defendants' transgressions, he stated repeatedly that the Leonards being named "defendants" was "offensive" and made him "kind of speechless." *See* June 17, 2024 Status Conf. Tr., a true and correct copy of which is attached as Exhibit 1 hereto, 3:2-6, 3:10-12, 4:1-4, 4:22-25. Defendants' callousness toward their victims' losses favors injunctive relief.

**5.    Because Defendants have elected not to participate in this lawsuit, it is unknown how the Leonards are currently employed.**

Between the death of their counsel in February 2023 and Larry Leonard's appearance at the June 17, 2024 status conference, Defendants refused to engage in the litigation process. (Dkts. 29-31, 34 p. 1). Accordingly, the SEC does not know how the Leonards are currently employed. This uncertainty further supports injunctive relief.

As a result of all of these factors, the Court should permanently restrain and enjoin Teshuater, Larry Leonard, Shuwana Leonard, and TBG from violating Section 10(b) of the Exchange Act, Rule 10b-5 of the Exchange Act, and Section 17(a) of the Securities Act and Teshuater, Larry Leonard, and Shuwana Leonard from violating Section 5 of the Securities Act.

The application of these factors also supports a more specific, permanent injunction

5

enjoining Teshuater, Larry Leonard, Shuwana Leonard, and TBG from directly or indirectly, including, but not limited to, through any entity they own or control, participating in the issuance, offer, or sale of any security, digital or otherwise; provided, however, that such injunction shall not prevent them from purchasing or selling securities for their own account. *See* Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)]; *see also SEC v. Sneed*, No. 3:20-CV-2988-S-BH, 2021 WL 4202171, at *9-10 (N.D. Tex. Sept. 10, 2021) (recommending conduct-based injunction similar to one requested here), *report and recommendation adopted*, 2021 WL 4408425 (N.D. Tex. Sept. 27, 2021); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2021 WL 75551, at *14-16 (N.D. Tex. Jan. 8, 2021) (ordering same); *SEC v. Mattera*, No. 11 Civ. 8323(PKC), 2013 WL 6485949, at *18 (S.D.N.Y. Dec. 9, 2013) (same); *SEC v. JSG Cap. Invs., LLC*, No. 16-cv-02814-JSW (JCS), 2017 WL 3579570, at *9-10 (N.D. Cal. June 30, 2017) (recommending same), *report and recommendation adopted*, 2017 WL 3575599 (N.D. Cal. July 28, 2017).

**B.     The Court should order Defendants to pay disgorgement and prejudgment interest.**

    **1.     Principles of disgorgement.**

This Court may order disgorgement of Defendants' ill-gotten gains causally connected to their securities law violations. A disgorgement award "that does not exceed a wrongdoer's net profits and is awarded for victims" is permissible equitable relief under Section 21(d)(5) of the Exchange Act. *Liu v. SEC*, 591 U.S. 71, 74-75 (2020). Disgorgement is also authorized under amendments to the Exchange Act that Congress enacted after *Liu*. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."); 15 U.S.C. § 78u(d)(3)(A)(ii) (granting jurisdiction to "require disgorgement ... of any unjust enrichment by the person who received such unjust enrichment as a result of such violation."). The Fifth Circuit has stated that the new provisions "authorize legal 'disgorgement' apart from the equitable

6

'disgorgement' permitted by *Liu*." *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022). But the court also stated that the amendments "ratif[y] the pre-*Liu* disgorgement framework used by every circuit court of appeals." *Id.* at 338; *see also SEC v. Morris*, No. 3:20-CV-02958-B, 2022 WL 9497046, at *3-4 (N.D. Tex. Oct. 14, 2022) (discussing *Hallam*). In this case, any difference in approach between legal disgorgement and equitable disgorgement is immaterial.

Under both grants of authority, this Court has broad discretion in determining the amount of disgorgement. *See, e.g.*, *Helms*, 2015 WL 5010298, at *19 (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir.1993)). "In the context of an offering of securities in violation of the securities laws, the proper starting point for a disgorgement award is the total proceeds received from the sale of the securities." *Faulkner*, 2021 WL 75551, at *3 (quoting *SEC v. Amerifirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *3 (N.D. Tex. May 5, 2008)). The "SEC has the burden reasonably to approximate" that amount, which "may include interest." *Hallam*, 42 F.4th at 341 (citing *Blatt*, 583 F.2d at 1335); *see also SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021). Once the SEC establishes a reasonable approximation of the defendant's ill-gotten gains, the burden shifts to the defendant, who "must prove that the requested amount is 'unreasonable.'" *Hallam*, 42 F.4th at 34; *see also Sneed*, 2021 WL 4202171, at *10 (citation omitted); *SEC v. Voight*, No. H-15-2218, 2021 WL 5181062, at *10 (S.D. Tex. June 28, 2021) (citations omitted). Any risk of uncertainty in calculating the disgorgement amount falls on the wrongdoer whose illegal conduct created the uncertainty. *Providence Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 788, 803-04 (1869); "[D]oubts are to be resolved against the defrauding party." *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

**2.     Defendants' disgorgement.**

The requested disgorgement here satisfies the principles identified in section II.B.1. above. The SEC seeks disgorgement from Defendants, on a joint and several basis, in the amount of

$395,189.34. *See* Decl. of Carol Hahn ("Hahn Dec."), a true and correct copy of which is attached as Exhibit 2 hereto, ¶ 14. This amount equals the proceeds received by Defendants from their illegal offerings and fraudulent schemes ($486,984.28), net of: (1) distributions to investors; and (2) payments that might be considered business expenses. *Id.* This amount of disgorgement represents Defendants' net profits and was determined through a detailed review of the relevant financial records. *Id.* ¶¶ 4-13. Furthermore, the SEC intends to distribute any amounts collected to Defendants' victims to the extent feasible and will apply to the Court for approval of any future distribution. *See SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (finding *Liu*'s "awarded for victims" language satisfied by the SEC's representation that "money the defendants return will go to the harmed investors" (internal quotation marks omitted)).

Because Defendants commingled investor funds and acted together as one economic unit, it is not feasible to allocate the ill-gotten gains received to any particular Defendant. *Id.* ¶ 14. Joint and several liability is therefore appropriate here. The Court has "flexibility" to impose joint and several liability against "individuals or partners" engaged in "concerted wrongdoing." *Liu,* 591 U.S. at 82-83, 90-91. Here, Defendants were partners in concerted wrongdoing, and they are equally culpable for the fraudulent scheme. *See id.* at 90-91; *SEC v. Halek,* 537 F.App'x 576, 581 (5th Cir. 2013); *SEC v. United Energy Partners, Inc.*, 88 F.App'x. 744 (5th Cir. 2004).

### 3.     Prejudgment interest.

The Court should award PJI on the disgorgement amount—determined using the IRS's rate charged for the underpayment of income tax. *See, e.g., Helms*, 2015 WL 5010298, at *19. An award of PJI is appropriate because it prevents wrongdoers from benefitting from what is, in effect, an interest-free loan resulting from their illegal activity. *SEC v. Evolution Cap. Advisors, LLC*, No. H-11-2945, 2013 WL 5670835, at *3 (S.D. Tex. Oct. 16, 2013); *SEC v. Gunn,* 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010). The PJI on the disgorgement amount of $395,189.34,

for the time period beginning on March 1, 2019 (the conclusion of Defendants' fraud schemes) and ending on May 31, 2024, is $119,520.76. Hahn Dec. ¶ 15 and Ex. A. As with disgorgement, joint and several liability is also appropriate for the award of PJI. *See, e.g., Helms*, 2015 WL 5010298, at *20. ("[B]ecause the evidence has established that [the defendants] had a close relationship in engaging in the illegal conduct, they should be jointly and severally liable for the prejudgment interest.").

C.   **The Court should order the Leonards to pay civil penalties.**

Both the Securities Act and the Exchange Act authorize courts to impose civil penalties and establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's conduct and the risk of substantial losses created by such conduct. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 17 C.F.R. § 201.1001 (increasing statutory amounts to reflect inflation). These penalties are designed to punish individual violators and deter future violations of the federal securities laws. This is necessary because, without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains. *Voight,* 2021 WL 5181062, at *14 (quotations and citations omitted).

The third penalty tier—which requires that the violation involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" (the basis for second-tier penalties) **and** that "such violation directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons"—provides that sanctions for *each violation* shall not exceed the greater of either: (1) $230,464 (for violations occurring after November 3, 2015, for a defendant who is a natural person); or (2) the gross amount of the defendant's pecuniary gain. 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1001.

Although the statutory tier determines the maximum penalty allowed *per violation*, the

9

amount of the penalty to be imposed is left to the Court's discretion. *See Voight,* 2021 WL 5181062, at *14 (citing *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)). The following factors are relevant to determine if a penalty is appropriate and, if so, the amount:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014); *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 279 (E.D.N.Y. 2011). The SEC analyzed these factors in section II.A. above in detailing why injunctive relief is necessary. For the same reasons, the Court should impose civil penalties against Larry Leonard and Shuwana Leonard.

In particular, the Leonards' fraud was egregious and involved multiple schemes. Their conduct also exhibited a high degree of scienter. Moreover, the Leonards caused substantial investor harm. The Leonards' fraud ensnared more than 500 victims over a 22-month period, resulting in investor losses of almost $500,000.

Based on an analysis of the factors, the SEC asks the Court to impose a third-tier penalty of $230,464 against Larry Leonard and a third-tier penalty of $230,464 against Shuwana Leonard. The requested penalties are warranted by the Leonards' egregious misconduct, are highly reasonable in light of the much higher penalties that could have been requested as a result of the Leonards' multiple securities law violations, and will serve to uphold the aims of the federal securities laws by punishing the Leonards and deterring future harm to investors.[2]

---

[2] Because Teshuater and TBG are essentially alter egos of the Leonards, which held bank accounts the Leonards used to facilitate their misappropriation of investor funds, the SEC is foregoing its claim for civil penalties against Teshuater and TBG.

## III.
## CONCLUSION

For the foregoing reasons, the Court should grant the SEC's motion in full and enter the proposed Final Judgments.

Dated:  July 19, 2024                             Respectfully submitted,

*s/ Jason J. Rose*
JASON J. ROSE
Texas Bar No. 24007946
S.D. Tex. Bar No. 1070896
U. S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102-6882
Phone: (817) 978-1408
Fax: (817) 978-4927
rosej@sec.gov

ATTORNEY FOR PLAINTIFF
U.S. SECURITIES AND EXCHANGE
COMMISSION

## CERTIFICATE OF SERVICE

I affirm that on July 19, 2024, I electronically filed the foregoing document with the Clerk of Court for the Southern District of Texas, Houston Division, and have served all parties in accordance with Fed. R. Civ. P. 5(b)(2).

| | |
|---|---|
| Larry Donnell Leonard, II | Shuwana Leonard |
| 2431 Blackridge Rd. | 2431 Blackridge Rd. |
| Houston, TX  77067 | Houston, TX  77067 |
| teshuaterceo@gmail.com | teshuatercoo@gmail.com |
| (individually and as president of Teshuater, LLC and Teshua Business Group, LLC) | (individually and as director of operations of Teshuater, LLC and Teshua Business Group, LLC) |

*s/ Jason J. Rose*
JASON J. ROSE